# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSE I. TAPIA MONTERO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 1:21-cv-354-TFM-N |
| | : | |
| HAN VAN NGUYEN, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *Plaintiff's Motion to Remand*. Doc. 5, filed September 9, 2021. Plaintiff Jose I. Tapia Montero requests the Court remand this matter to the Circuit Court of Mobile County, Alabama because he is a Jones Act seaman and has brought Jose Act and general maritime claims against Defendant Han Van Nguyen, who has not overcome his burden to establish Plaintiff's Jones Act status is fraudulently plead. *Id.* Having considered the motion, response and reply thereto, and relevant law, the Court finds the motion to remand is due to be **DENIED**.

## I.  PROCEDURAL BACKGROUND

This matter was originally filed by Plaintiff Jose I. Tapia Montero ("Plaintiff") in the Circuit Court of Mobile County, Alabama on July 7, 2021. Doc. 1-2 at 1-12. In the Complaint, Plaintiff brings claims of negligence, unseaworthiness, and maintenance and cure in his status as a Jones Act seaman and pursuant to the general maritime laws of the United States against:

> Han Van Nguyen [("Defendant")]; 1 through 5, whether singular or plural, that person, firm, corporation, or other legal entity who was the owner of the premises, vessel and/or equipment where the events which are the subject to this lawsuit; 6 through 10, whether singular or plural, the person, firm, corporation, or other entity who or which was the principal, master, or employee of fictitious Defendants 1-5 on the dates of the vents which are the subject to this lawsuit; 11 through 15, whether singular or plural, the person, firm, corporation, or other entity who was

> responsible for the maintenance, upkeep, and supervision of the premises, vessel, and/or equipment at the site of the events which are the subject to this lawsuit; 16 through 20, whether singular or plural, the person, firm, corporation, or other entity which undertook, had a duty, and/or was otherwise responsible for the maintenance, upkeep, and supervision of the premises, vessel and/or equipment at the site of the event which are the subject to this lawsuit. [1]

*Id.* On August 10, 2021, Defendant removed this matter to this Court and asserted pursuant to 28 U.S.C. § 1332 and argues Plaintiff has fraudulently plead Jones Act status. Doc. 1.

On September 9, 2021, Plaintiff filed his instant motion to remand for which the Court entered a submission order. Docs. 5, 6. Defendant timely filed his response and Plaintiff his reply. Docs. 8, 9. The motion to remand is fully briefed and ripe for review, and the Court finds oral argument unnecessary.

## II.     FACTUAL ALLEGATIONS

Plaintiff alleges he was injured on April 23, 2021, while he was employed by Defendant as a Jones Act seaman and aboard Defendant's fishing vessel, JENNY JASMINE ("the vessel"), which was owned, operated, and/or managed by Defendant. Doc. 1-2 ¶ 6. Plaintiff alleges while the vessel was deployed on navigable waters and Plaintiff, as a member of its crew, was contributing to and aiding the vessel to accomplish its mission, he sustained serious injuries to his hands, face, neck, arms, legs, and other parts of his body when a fire erupted aboard the vessel.

---

[1] Plaintiff states, "[T]he identities of the fictitious party Defendants herein are otherwise unknown to Plaintiff at this time, and their true names will be substituted by amendment when ascertained." Doc. 1-2 at 3. "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)). However, "'[t]here may be times when, for one reason or another, the plaintiff is unwilling or unable to use a party's real name,'" and "'one may be able to describe an individual (e.g., the driver of an automobile) without stating his name precisely or correctly.'" *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (quoting *Bryant v. Ford Motor Co.*, 832 F.2d 1080, 1096 n.19 (9th Cir. 1978)). Further, as fictitious party pleading is permitted in Alabama state court, the Court does not disturb the pleading until jurisdiction is resolved.

*Id.* ¶ 7. Plaintiff alleges, as a result, he sustained severe burns, was hospitalized at the University of South Alabama burn center, and has required, and will require extensive medical treatment, including extensive skin grafts. *Id.* ¶ 8.

### III. STANDARD OF REVIEW

The Jones Act authorizes "[a] seaman injured in the course of employment . . . to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. "A Jones Act claim has four elements: (1) plaintiff is a seaman; (2) plaintiff suffered an injury in the course of employment; (3) plaintiff's employer was negligent; and (4) employer's negligence caused the employee's injury, at least in part." *Bendlis v. NCL (Bahamas), Ltd.*, Civ. Act. No. 14-24731-CIV-ALTONAGA/O'Sullivan, 2015 U.S. Dist. LEXIS 30578, at *4, 2015 WL 1124690, at *2 (S.D. Fla. March 11, 2015) (citation omitted).

> Jones Act cases are generally not removable from state court. *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995). However, in certain circumstances, "'defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal.'" *Id.* (quoting *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993)). To determine whether to retain jurisdiction or remand the case, the district court may use a "summary judgment-like procedure" and "must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of the plaintiff." *Id.* at 176. The defendant bears the burden of showing that "'there is no possibility that plaintiff would be able to establish a cause of action'" *id.* (quoting *Lackey*, 990 F.2d at 207), and the district court may deny remand only if it "determine[s] that *as a matter of law* there was no reasonable basis for predicting that the plaintiff might establish liability," *id.* (alteration in original) (citation and internal quotation marks omitted).
>
> . . . . The question whether [a plaintiff] was a seaman is a mixed question of law and fact. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 369, 115 S. Ct. 2172, 132 L. Ed. 2d 314 (1995). To qualify as a seaman under the Jones Act, a plaintiff must demonstrate that (1) his duties "contribute to the function of the vessel or to the accomplishment of its mission," and (2) he has "a connection to a vessel in navigation (or an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* at 368, 115 S. Ct. 2172 (citation, internal quotation marks, and alteration omitted). "[T]he ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based

employee who happens to be working on the vessel at a given time." *Id.* at 370, 115 S. Ct. 2172.

*Teaver v. Seatrax of La., Inc.*, 434 F. App'x 307, 309-10 (5th Cir. 2011); *see also Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207-08 (5th Cir. 1993) (stating similar standard of review to determine whether a Jones Act claim has been fraudulently plead to prevent removal); *Bendlis*, 2015 U.S. Dist. LEXIS 30578, at *4-6, 2015 WL 1124690, at *2 (using the same standard of review in *Lackey* to determine whether a Jones Act claim has been fraudulently plead to prevent removal); 14AA CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3677 (4th ed.) ("If a state forum is chosen by the plaintiff, the case law makes it clear that the defendant may not remove the case to a federal court unless the Jones Act claim was interposed fraudulently; this results from the Jones Act's incorporation by reference of the provision in the Federal Employers' Liability Act limiting the defendant's right of removal in actions under that statute.").

### III.  DISCUSSION AND ANALYSIS

Plaintiff argues Defendant has failed to overcome his heavy burden to show Plaintiff fraudulently pleaded his Jones Act seaman status. In support of Plaintiff's argument, he states he contributed to the function of the vessel because he assisted with welding work aboard the vessel and he had a substantial connection to the vessel because he was assigned to the vessel and conducted the ship's work. Doc. 5 at 4-8. In response, Defendant argues Plaintiff fraudulently pleaded Jones Act seaman status because he was a transitory worker who lacked a "substantial connection in nature" to the vessel, he performed specialized repair service on the vessel while it was moored to a dock and was not engaged in any "seagoing activity," his work on the docked vessel was not "of a seagoing nature," and after he completed his work on the vessel, "he was not going to sail with the vessel." Doc. 8 at 1. In support of Defendant's arguments, he has submitted an unsworn declaration, pursuant to 28 U.S.C. § 1746. Doc. 1-3.

In the 1990s, the Supreme Court decided three cases that were enormously helpful in giving meaning to the term "seaman."

1.   *Wilander*

First was *McDermott International, Inc. v. Wilander*[, 498 U.S. 337, 111 S. Ct. 807, 112 L. Ed. 2d 866 (1991)]. The Court took this case primarily to resolve a split among the circuits on the question of whether a plaintiff, to establish seaman status, was required to show that he aided in the navigation of a vessel. [*Id.* at 340, 111 S. Ct. 807.] The Court rejected the circuit cases imposing this requirement and adopted the test set forth in Judge Wisdom's landmark decision in *Offshore Co. v. Robison*, requiring proof that the seaman "contributed to the function of the vessel or to the accomplishment of its mission" and have an employment-related connection to a vessel. [266 F.2d 769, 779 (5th Cir. 1959).] The *Wilander* Court emphasized, "The key to seaman status is employment-related connection to a vessel in navigation." [*Wilander*, 498 U.S. at 355, 111 S. Ct. 807.]

In order to give effect to the land-based/sea-based distinction, the Court "believe[d] the better rule is to define 'master or member of a crew' under the [Longshore and Harbor Worker's Compensation Act ("LHWCA")], and therefore 'seaman' under the Jones Act, solely in terms of the employee's connection to a vessel in navigation." [*Id.* at 354, 111 S. Ct. 807.] The Court was persuaded that the connection requirement was consistent with "Congress' land-based/sea-based distinction," explaining: "All who work at sea in the service of a ship face those particular perils to which the protection of maritime law, statutory as well as decisional, is directed." [*Id.*]

2.   *Chandris*

The Supreme Court's next decision on seaman status came four years later in *Chandris, Inc. v. Latsis*. [515 U.S. 347, 115 S. Ct. 2172.] In this case, the plaintiff, Latsis, was a supervising engineer who oversaw an engineering department for a fleet of six passenger cruise ships. [*Id.* at 350, 115 S. Ct. 2172.] Latsis developed a detached retina while sailing on one of the vessels and sued because of an alleged delay by the employer in providing medical care. [*Id.* at 350–51, 115 S. Ct. 2172.] Latsis's duties required him to divide his work between the office and aboard ship when he sometimes sailed for inspection and supervision of engineering work. [*Id.* at 350, 115 S. Ct. 2172.] The Court was therefore asked to define the "relationship a worker must have to the vessel, regardless of the specific tasks the worker undertakes in order to obtain seaman status." [*Id.*] After discussing the judicial and legislative history of the passage of the LHWCA, the *Chandris* Court stated: "With the passage of the LHWCA, Congress established a clear distinction between land-based and sea-based maritime workers. The latter who owe their allegiance to a vessel and not solely to a land-based employer, are seamen." [*Id.* at 359, 115 S. Ct. 2172.] The Court also pointed out that Congress, by enacting the LHWCA, had twice overturned the Supreme Court's extension of seamen's remedies to other

maritime workers doing seamen's work and incurring seamen's hazards. [*Id.*] Justice O'Connor summed up the effect of these two congressional acts: "Whether under the Jones Act or general maritime law, seamen do not include land-based workers." [*Id.* at 358, 115 S. Ct. 2172.]

In explaining the importance of the requirement that a seaman have a substantial, enduring relationship to a vessel, the Court rejected a snapshot test for seaman status, denouncing a test that inspected "only the situation as it exists at the instance of injury" and noting that "a more enduring relationship is contemplated in the jurisprudence." [*Id.* at 363, 115 S. Ct. 2172.] The Court emphasized that "a worker may not oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured." [*Id.*] The Court also recognized that "[s]eaman status is not co-extensive with seamen's risk." [*Id.* at 361, 115 S. Ct. 2172.] "Some workers who unmistakably confront the perils of the sea, often in extreme form, are thereby left out of the seamen's protections." [*Id.* at 362, 115 S. Ct. 2172.]

The Court then turned to apply these principles to the sufficiency of plaintiff's relationship to his employer's fleet of vessels to qualify for seaman status. It defined the substantial-connection test with two elements: "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." [*Chandris*, 515 U.S. at 368, 115 S. Ct. 2172.] In discussing the duration element, the Court stated that "the total circumstances of an individual's employment must be weighed." [*Id.* at 370, 115 S. Ct. 2172 (quoting *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (5th Cir. 1984)).] The *Chandris* Court approved our rule of thumb as a guide to the degree of permanence required to satisfy the duration element. "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." [*Id.* at 371, 115 S. Ct. 2172.]

Because the record was unclear regarding how much of plaintiff's time was spent working on the employer's vessels as opposed to his land-based work, the Court remanded the case for application of the stated principles to the facts. [*Id.* at 374–75, 115 S. Ct. 2172.]

3.   *Papai*

The Supreme Court provided more guidance on the nature element of the substantiality requirement in *Harbor Tug and Barge Co. v. Papai* – the third case in this trilogy. [520 U.S. 548, 117 S. Ct. 1535, 137 L.Ed.2d 800 (1997).] . . . In *Papai*, the shipowner, Harbor Tug, was one of several tugboat operators operating in San Francisco Bay that obtained workers through a union hiring hall. [*Id.* at 551, 117 S. Ct. 1535.] Papai was engaged through the union hall to paint the housing of a Harbor Tug, the Pt. Barrow. [*Id.*] The entire time Papai worked on the Pt. Barrow, it was located dockside. [*Id.* at 559, 117 S. Ct. 1535.]

The Court stated that "[f]or the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." [*Id.* at 555, 117 S. Ct. 1535.] It further explained that "[t]his will give substance to the inquiry both as to duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees." [*Id.*] The Court then considered Papai's actual duties and whether they satisfied the nature element. It determined, "[h]is actual duty on the Pt. Barrow throughout the employment did not include any seagoing activity; he was hired for one day to paint the vessel at dockside and he was not going to sail with the vessel after he finished painting it." [*Id.* at 559, 117 S. Ct. 1535.]

Papai contended that the entire group of vessels he worked on through the union hiring hall constituted an identifiable group of vessels and his connection to this "fleet" should be considered. [*Id.* at 555, 117 S. Ct. 1535.] The Supreme Court rejected such a broad definition of "fleet." The Court stated: "In deciding whether there is an identifiable group of vessels of relevance for a Jones Act seaman-status determination, the question is whether the vessels are subject to common ownership or control." [*Id.* at 557, 117 S. Ct. 1535.]

Papai then also argues that he qualified as a seaman if his jobs over the past two and a half months working on Harbor Tug's vessels were considered. [*Id.* at 559, 117 S. Ct. 1535.] The Court answered,

> Papai testified at his deposition that he worked aboard the Pt. Barrow on three or four occasions before the day he was injured, the most recent of which was more than a week earlier. Each of these engagements involved only maintenance work while the tug was docked. The nature of Papai's connection to the Pt. Barrow was no more substantial for seaman-status purposes by virtue of these engagements than the one during which he was injured . . . . In any event these discrete engagements were separate from the one in question, which was sort of "transitory or sporadic" connection to a vessel or a group of vessels that, as we had explained in *Chandris*, does not qualify one for seaman status.

[*Id.* at 559–60, 117 S. Ct. 1535.]

*Sanchez v. Smart Fabricators of Tex., L.L.C.*, 997 F.3d 564, 569-72 (5th Cir. 2021) (footnotes omitted).

The Fifth Circuit in *Sanchez* went on to distill the principles from the three Supreme Court cases that are discussed above:

Page 7 of 11

> In *Chandris*, the Court made clear that seamen and non-seamen maritime workers may face similar risks and perils, and that this is not an adequate test for distinguishing between the two. [*See* *Chandris*, 515 U.S. at 361–62, 115 S. Ct. 2172.] We therefore conclude that the following additional inquiries should be made:
>
> (1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?
>
> (2) Is the work sea-based or involve seagoing activity?
>
> (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?
>
> Simply asking whether the worker was subject to the "perils of the sea" is not enough to resolve the nature element. Consider the captain and crew of a ferry boat or of an inland tug working in a calm river or bay, or the drilling crew on a drilling barge working in a quiet canal. No one would question whether those workers are seamen. Yet, their risks from the perils of the sea is minimal.

*Sanchez*, 997 F.3d at 574 (footnotes omitted).

While *Sanchez* is a Fifth Circuit case, it is persuasive and the Court finds it is an accurate statement of the law, despite Plaintiff's assertion that prior decisions of this Court contradict *Sanchez*. This Court's decision in *Baucom v. Sisco Stevedoring, LLC*, which Plaintiff cites to support its argument that prior decisions of this Court contradict *Sanchez*, focuses on the substantial nature of a plaintiff's connection to a vessel and whether the plaintiff was subject to the "perils of the sea." Civ. Act. No. 06-0785-WS-B, 2008 U.S. Dist LEXIS 7724, 2008 WL 313174 (S.D. Ala. Feb. 1, 2008) (quoting *In re Endeavor Marine, Inc.*, 234 F.3d 287 (5th Cir. 2000)). This Court in *Baucom* stated "it is incorrect as a matter of law to argue that Baucom 'is not a Jones Act seaman merely because his duties do not literally carry him out to sea.'" *Id.*, 2008 U.S. Dist LEXIS 7724, at *25, 2008 WL 313174, at *6. However, the Court finds *Sanchez* does not contradict this Court's statement in *Baucom* because it concludes one must consider other

factors than just whether the plaintiff was subject to the "perils of the sea," like in *Baucom*, and refines the inquiry as to the substantial nature of a plaintiff's connection to a vessel.

As to the first prong of the seaman-status test, whether Plaintiff's duties contributed to the function of the vessel or to the accomplishment of its mission, Defendant does not contest. Indeed, Plaintiff argues he assisted welding work aboard the vessel, which certainly contributed to the function of the vessel because it contributed to the condition of the vessel to engage in fishing. *See Sanchez*, 997 F.3d at 574 (concluding plaintiff's welding jobs aboard two vessels contributed to the function of the vessels because that work was necessary to keep the vessels in condition to drill for oil and gas).

As to the second prong of the seaman-status test, whether Plaintiff has a connection to a vessel in navigation that is substantial in terms of both its duration and nature, Defendant concentrates its argument, specifically on the nature component. In Defendant's declaration, he states during the month of April 2021, the vessel was moored to the dock at Graham Shrimp Company in Bayou La Batre, Alabama where maintenance and repairs were performed and during which time the vessel was not crewed or operated as a shrimping vessel and did not leave the dock. Doc. 1-3. Defendant further states Plaintiff worked as a welder's helper on the vessel for about two weeks before the incident occurred that is the basis of this instant action. *Id.* Defendant states Plaintiff did not perform work or was present aboard the vessel while it was underway or engaged in shrimping activities, and once the repairs to the vessel were complete, Plaintiff would not have performed services aboard, or in connection with, the vessel, and would not have left the Graham Shrimp Company dock with the vessel's crew. *Id.*

Plaintiff does not specifically dispute Defendant's assertions in his declaration but characterizes the declaration as self-serving and attacks the value of it because it is unsworn.

Plaintiff also has not availed himself of the opportunity in either his motion or reply to submit evidence to rebut Defendant's assertions in his declaration, despite the fact that he acknowledge the Court may "pierce the pleadings" when a removing party alleges a plaintiff has fraudulently pleaded Jones Act seaman status. Doc. 5 at 3-4.

>As to Defendant's unsworn declaration:
>
>Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public, such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
>. . .
>
>(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>(Signature)".

28 U.S.C. § 1746. The Court finds Defendant's declaration substantially complies with 28 U.S.C. § 1746 and may be used to support his opposition to the motion to remand. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . .").

The Court will now address the three inquiries that are set forth in *Sanchez*. As to the first inquiry, whether Plaintiff owed his allegiance to the vessel, rather than simply to a shoreside employer, Plaintiff was a welder's helper who performed repair services to the vessel, which indicates his allegiance was to a shoreside employer. As to the second inquiry, whether Plaintiff's work was sea-based or involved seagoing activity, the vessel was moored to the dock at Graham

Shrimp Company while Plaintiff performed his welder's helper duties, which indicates his work was not sea-based. Finally, as to the third inquiry, whether Plaintiff's assignment to a vessel is limited to performance of a discrete task after which Plaintiff's connection to the vessel ends or whether Plaintiff's assignment included sailing with the vessel from port to port or location to location, Plaintiff's duties were limited to a discrete task to perform vessel repair services as a welder's helper at the conclusion of which he would not sail with the vessel.

Based on the above analysis, the Court finds Defendant has met his burden at this time to show there is no possibility that Plaintiff would be able to establish he had a connection to the vessel that was substantial in nature and, therefore, would not be able to establish a cause of action under the Jones Act.[2]

## IV.    CONCLUSION

Accordingly, Plaintiff's Motion to Remand (Doc. 5) is **DENIED**.

**DONE** and **ORDERED** this 23rd day of February 2022.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE

---

[2] The Court's jurisdiction is subject to the Court's ongoing review.